# CITY OF ST. LOUIS, Plaintiff in Error, v. HENRY WORTMAN.

### In Banc, June 26, 1908.

1. **CONSTITUTIONAL LAW: Title: Dairy Commission: Adultera-tion: Penalty.** That portion of the Act of 1905 whose title is, "An act to create the office of State Dairy Commissioner, and to define his term of office, duties and powers," which attempts to establish a standard of strength and purity of milk and cream, and declares that "whoever shall sell, or offer or expose for sale anywhere in this State, milk or cream containing any foreign substance or preservative of any kind whatever injurious to health, shall be guilty of a misdemeanor," etc., is unconstitutional, because not embraced in the title. Nor is it germane to the title, but is independent and outside of the title.

2. **ORDINANCE AND STATUTE: Conflicting: Preservatives in Milk.** An ordinance providing that no foreign substance or preservative of any kind shall be placed in milk or cream for any purpose whatsoever, and the statute of 1905, providing that no foreign substance or preservative of any kind shall be placed in milk or cream which is injurious to health, are in conflict, and if the statute is valid the ordinance is invalid.

3. **———: ———: ———: Unconstitutional Statute.** But the statute being invalid, because that portion thereof referring to preservatives in milk or cream was not embraced in the title of the act of which it is a part, the ordinance, though in conflict with it, is not for that reason invalid, and defendant cannot, because of the conflict between the ordinance and that invalid statute, escape punishment in a prosecution by the city for a violation of the ordinance if it is otherwise valid.

4. **———: ———: Formaldehyde: Pure Food Law.** But the ordinance, which prohibits the adding to milk or cream any foreign substance of any kind for any purpose, and the Act of 1907, providing that "food shall be deemed adulterated if it contains any added substance which is poisonous or injurious to health," are inconsistent and in conflict. The ordinance is much broader than the statute and is invalid, being by necessary implication repealed by the statute. Defendant cannot be punished for violating the ordinance in a prosecution by the city, though the substance in his milk was formaldehyde.

5. ———: ———: ———: ———: **Poison.** But formaldehyde is a well-known poison, and the putting of it in milk is prohibited by that statute and defendant can be prosecuted by the State. That statute does not mean that poisons or other substances injurious to health may be placed in milk or cream provided the quantity used is not sufficient to cause injury to health. It means that to place any substance in food of any kind, in any quantity, for any purpose, which is poisonous or injurious to health, is a misdemeanor.

6. ———: ———: ———: ———: ———: **Guaranty.** Section 12 of the Pure Food Law of 1907, providing that a retail dealer who can establish a guaranty signed by the wholesaler or manufacturer that the substance is not adulterated or misbranded, is not liable to punishment, does not mean that food containing poison in any quantity can be sold. It means that the dealer can sell any food in original packages, without opening and testing them, if they are protected by such guaranty.

7. ———: ———: ———: **Interstate Commerce: Original Packages.** The city of St. Louis does not have the right to prohibit the sale of interstate shipments of products in the original unbroken packages. But if the original packages are broken, and the milk, cream or butter is sold in or from packages different from those in which it was shipped into this State, the city can enact an ordinance in harmony with the statute that makes such sales invalid in prosecutions by the city.

8. **CONVICTION: Repeal of Law After Appeal.** The repeal of an ordinance by a statute, pending a prosecution under its provisions, operates to relieve defendant, unless it is otherwise provided in the act repealing the ordinance.

Error to St. Louis Court of Criminal Correction.— *Hon. Hiram N. Moore,* Judge.

AFFIRMED.

*Charles W. Bates* and *Charles P. Williams* for plaintiff in error.

(1) With respect to the acts of the Legislature passed in 1907 while these cases were pending in the Supreme Court, section 1327 of the general ordinances of the city prevents a legislative appeal from abating a suit to collect the penalties provided. (2) Section

5 of the Act of 1905 relating to the State Dairy Commissioner, if it be interpreted as nullifying the provisions of city ordinances and charters, is unconstitutional because no hint of any such purpose appeared in the title. (3) All the governments, Federal, State and city, can and do work together in harmony, furnishing treble guarantee for the wholesomeness of the milk and cream sold in this city.

*Wm. L. Bohnenkamp* for defendant in error.

(1) (a) The statute provides that the products shall be deemed adulterated if they do not conform to certain standards. But the ordinance absolutely prohibits the sale of any such products if they do not come up to certain standards, regardless of whether they are adulterated or not. This is a fatal inconsistency, for the ordinance is clearly broader than the statute, being an absolute and sweeping prohibition, whilst the statute limits the prohibition to the question of adulteration as a fact, when non-compliance with the standards is found to exist. This conflict is also fatal because a different form of pleading is required and the defendant has a defense under the limited prohibition of the statute that is denied him by the ordinance. (b) The statute authorizes and permits the use of preservatives in milk if not injurious to health, while the ordinance prohibits the use of preservatives for any purpose and however harmless or useful the preservation may be. St. Louis v. Dorr, 145 Mo. 482; Newton v. Belger, 143 Mass. 598. (2) Section 17 of ordinance No. 20808, which is the section under which this defendant is being prosecuted, prohibits the use of any foreign substance or "preservatives" for any purpose whatsoever, even to preserve the sweetness or condition thereof, whilst section 5 of the Act of 1905 only prohibits the use of any foreign substance or preservative that is injurious to health. Both cannot stand

together. Said ordinance also prescribes penalties from $25 to $100, whilst said act prescribes penalties from $10 to $100. The Act of 1905, Laws 1905, page 131, provides, in substance, that no person shall sell or offer for sale, anywhere in this State, milk or cream containing any foreign substance or preservative "that is injurious to health." This clearly permits and authorizes the use of preservatives which do not render the product injurious to health, whilst the said ordinance expressly and absolutely prohibits their use for any purpose. "That which is allowed by the general laws of the State cannot be prohibited by ordinance." Collins v. Hatch, 18 Ohio 523; State v. Brittain, 89 N. C. 574; Robinson v. Franklin, 34 Am. Dec. 625; Newton v. Belger, 143 Mass. 598. (3) These inconsistencies and conflicts, both in specific provisions and in policy, operate as a repeal of said ordinance by a statute of the State. The Legislature can modify or repeal ordinances, and "such repeal need not be in express terms." If the intention clearly appears to repeal, the ordinance must give way to legislative act. State ex rel. v. Stobie, 194 Mo. 61; State ex rel. v. Bell, 119 Mo. 75; People v. Thurman, 85 Mich. 110; Mulcahy v. Newark, 57 N. J. L. 513.

WOODSON, J.—It is conceded by the defendant in error that the plaintiff's statement of the case is full and fair; and for economy of time I will adopt that statement as the statement of court, which is as follows:

"This was a prosecution instituted by the city attorney of the city of St. Louis against Henry Wortman, the defendant in error, to recover a penalty of $100 for the violation of section 17 of Ordinance 20808, approved August 27, 1902. Section 17 of the ordinance, upon which the prosecution was founded, is as follows:

" 'Section 17. Any person, firm or corporation, who shall sell, expose for sale, exchange, deliver, dis-

pose of or transport, convey, carry, or with any such intent as aforesaid have in his or her care, custody, control or possession, any milk or cream having therein, or containing any foreign substances of any kind whatever, or coloring matter, or any adulteration or preservative, whether for the purpose of artificially increasing the quality of the milk or cream, or for preserving the condition or sweetness thereof, or for any purpose whatever, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars for each and every offense.' ·

"The information charged that the defendant in error carried and exposed for sale, in the city of St. Louis, skimmed milk, containing a preservative known as formaldehyde. The defendant was fined in the police court and took an appeal to the St. Louis Court of Criminal Correction. In said last-mentioned court, the defendant filed a motion to quash the information. The court entered judgment sustaining the motion to quash and discharging the defendant upon the fifth ground set out in the said motion to quash, which is as follows: 'Because said ordinance is void as being inconsistent with the statute of this State.' "

After the case had been removed by writ of error to this court, the defendant in error filed a motion to dismiss the writ of error, together with the cause, upon the ground that certain statutes had been enacted which were irreconcilably inconsistent with the further enforcement of the ordinance. The statutes which are invoked to defeat and to dismiss this prosecution are as follows:

Session Laws of 1905, page 133, entitled, "Dairy Commissioner—State: Terms, Duties and Powers Defined."

Session Laws of 1907, page 246, entitled, "Dairy and Food Commissioner."

Session Laws of 1907, page 238, entitled, "Crimes and Punishments: Adulteration of Foods and Drugs."

I.   Counsel in this case, as in the case of St. Louis v. William Klausmeier, reported at page 119 of this volume, have presented and discussed many legal questions, most of which have been disposed of by this court in a series of cases, known as the "milk cases," reported in the 190 Missouri Report. No wise or useful purpose would be served by re-opening or discussing those questions again in this case. The questions presented by this record, not common to those presented in those cases, are but three in number, and they are as follows:

First:   Is section 5 of the Act of 1905, entitled, "An Act to create the office of State Dairy Commissioner and to define his term of service, duties and powers," constitutional?

Second.   Is section 17 of Ordinance No. 20808 of the city of St. Louis repealed by the acts of 1905 and 1907 before mentioned?

Third.   Have dealers in dairy products the right under said ordinance to sell or offer for sale in the city of St. Louis milk, cream, butter and other such products which contain formaldehyde or other foreign substances?

We will consider these three propositions in the order stated.

It is the first contention of the plaintiff that the Act of 1905 mentioned is unconstitutional and void for the reason that it was not enacted in accordance to the mandate of section 28 of article 4 of the Constitution of the State. That provision of the Constitution reads as follows: "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title." The Act of 1905, now under consideration, is entitled as follows:

"An Act to create the office of State Dairy Com-

missioner, and to define his term of service, duties and powers.''

Section 3 of the act points out the duties of the commissioner and therein provides that, ''it shall be the duty of the State Dairy Commissioner to inspect or cause to be inspected all creameries, public dairies, butter and cheese factories at least once a year, and oftener if possible, prescribe such reasonable rules and regulations for their operation as he deems necessary to fully carry out the provisions of laws now in force or that may be hereafter enacted relative to dairy products for the promotion and maintenance of public health and safety. . . . . He shall keep on hand a supply of standard test tubes or bottles and milk measures or pipettes adapted to the use of each milk testing machine the manufacturers or dealers of which have filed with the State Dairy Commissioner a certificate from the director of the Missouri agricultural experiment station that said milk testing machine when properly operated will produce accurate measurements of butter fat, and to furnish same at actual cost to any person desiring them, upon written request therefor, such tubes, bottles, measures and pipettes to be stamped with the letters 'S. D. C.' as certifying to their accuracy.''

Section 4 of the act points out the powers of the commissioner and therein provides: ''In the performance of his official duty the State Dairy Commissioner is hereby authorized and empowered to enter during business hours all creameries, public dairies, butter and cheese factories or other places where dairy products are sold or kept for sale, for the purpose of inspecting same; to take samples anywhere of any dairy product, or imitation thereof, suspected of being made or sold in violation of law, and cause the same to be analyzed or satisfactorily tested by the State Agricultural College chemist, and such analysis or test

shall be recorded and preserved as evidence, and the
certificate of such test, when sworn to by such chemist,
shall be admitted in evidence in all prosecutions that
may result under the operations of this act.''

Section 5 of the act and the section objected to
defines what creameries, public dairies, butter and
cheese factories shall be, and further provides that ''in
all prosecutions and proceedings for the enforcement
in any of the courts of this State, of all laws and regu-
lations of whatsoever nature now in force, or that may
hereafter be enacted, pertaining to the production, sale,
and distribution of dairy products of any kind what-
soever, the standard of purity and the definition of
said products shall be such as are now, or may here-
after be adopted, recognized and published by the offi-
cials of the United States Department of Agriculture,
and whosoever shall sell, or offer or expose for sale
anywhere in this State, milk or cream containing any
foreign substance or preservative of any *kind whatso-
ever injurious to health,* shall be guilty of a misde-
meanor, and on conviction be fined not less than ten
dollars, nor more than one hundred dollars, for each
offense.''

It will be seen from reading the title of the act that
it only authorizes the passage of an act creating the
office of State Dairy Commissioner, the term of his
service, his duties and powers, while the act itself not
only creates that office and defines his term of service,
duties and powers, but goes one step further and by sec-
tion five thereof attempts to establish the standard of
strength and purity of all dairy products, and provides
that whosoever shall sell or offer for sale any of such
products containing any foreign substance or preser-
vative of any kind injurious to health shall be guilty
of a misdemeanor and on conviction shall be punished
by a fine of not less than ten nor more than one hun-
dred dollars. The plaintiff insists that if the validity

of said section is tested by the constitutional provision before quoted, then that portion of it which establishes the standard of strength and purity of dairy products and prescribes the penalty for their adulteration is unconstitutional and void, for the reason that they are not expressed or mentioned in the title of the act. Counsel for defendant concede that the matters mentioned are not expressed in the title of the act, but contend that they are germane to the matters which are stated therein, and for that reason the section is valid notwithstanding said omission, for the reason that matters found in the body of the act and which are germane to those stated in the title need not be stated in the latter. If defendant's major premise is correct, then his conclusion must necessarily follow from the repeated decisions of this court; but if the matters stated in section five of the act are not germane to those stated in the title, then under the plain mandate of the Constitution we must hold that part of the section to be invalid. This brings us to the point where we must determine whether the matters stated in section five are independent of and outside of the title of the act, or whether they are germane to those expressed therein.

This court, in discussing this question in the case of St. Louis v. Weitzel, 130 Mo. l. c. 616, used this language: "The evident object of the provision of the organic law relative to the title of an act was to have the title like a guide board, indicating the general contents of the bill, and containing but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title, and does not infringe on constitutional prohibitions."

Judge Cooley, in treating this question, in his valuable work on Constitutional Limitations (7 Ed.), at page 205, used this language: "It may therefore be assumed as settled that the purpose of these provisions was: . . . . Second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." And, continuing on page 212, he says: "The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if, in fact, the Legislature have not seen fit to make it so. Thus, 'an act concerning promissory notes and bills of exchange' provided that all promissory notes, bills of exchange, *or other instruments in writing,* for the payment of money, or for the delivery of specific articles, or to convey property, or to perform any other stipulation therein mentioned, should be negotiable, and assignees of the same might sue thereon in their own names. It was held that this act was void as to all the instruments mentioned therein except *promissory notes and bills of exchange;* though it was obvious that it would have been easy to frame a title to the act which would have embraced them all, and which would have been unobjectionable."

At an early date this court, in the case of State v. Persinger, 76 Mo. l. c. 347, said: "We are of the opinion that the motion to quash was properly sus-

tained, for the reason that said act was entitled, 'An act to change the penalty for disturbance of the peace.' This title only authorized the passage of an act chang-ing the penalty for such disturbances of the peace as were then by law declared punishable. The said Act of 1870, while it changed the punishment for such of-fenses, went further and undertook to amend the Act of 1868 by so changing it as to make it an offense *for one person to disturb the peace of another person.* While the title of the act embraced but one subject, namely, a change of the penalty for disturbing the peace, the body of the act not only included that sub-ject, but also another, viz: amending the law so as to make that a disturbance of the peace under the Act of 1870 which was not an offense under the Act of 1868. It therefore follows that as the Act of 1870 embraced two subjects, one of which was not expressed in its title, it is violative of the 32d section, article 4 of the Constitution of 1865, and void as to so much thereof as is not expressed in the title.''

If we view the act in question in the light of the rule announced by the foregoing authorities, the con-clusion is irresistible that the portion of section five under consideration is unconstitutional, null and void for the reason it is not expressed in the title of the act nor germane to the subject stated therein.

II. The second question presented by this record for our consideration involves the contention of the defendant that section 17 of Ordinance No. 20808 of the city of St. Louis is repealed by the acts of 1905 and 1907.

One of the arguments presented here by defendant in favor of the repeal of section 17 of Ordinance No. 20808 involved the sole question decided in the case of St. Louis v. Klausmeier, supra; and we there held adversely to the contention of the defendant, and what we there said must be taken as conclusive against the

defendant upon the same proposition presented here. But defendant presents an additional reason here in favor of the repeal not presented in that case, which we will now consider.

Section 17 of the ordinance mentioned, the one defendant is charged with violating, provides that any person who shall sell or offer for sale any milk or cream having therein or containing any foreign substance of any kind whatever, or coloring matter, or any adulteration or preservative whether for the purpose of artificially increasing the quality of the milk or cream, or for preserving the condition or sweetness thereof, or for any purpose whatever, shall be deemed guilty of a misdemeanor. And section five of the Act of 1905, before mentioned, provides that "whosoever shall sell or offer for sale anywhere in this State milk or cream containing any foreign substance or preservative of any kind whatsoever injurious to health shall be guilty of a misdemeanor." The defendant was charged with offering for sale in the city of St. Louis milk containing a preservative known as formaldehyde, contrary to the provisions of said section seventeen of said ordinance. The defendant contends that the said section 17 of the ordinance and said section 5 of the Act of 1905 are so inconsistent that both of them cannot stand together, and that by necessary implication the latter repeals the former.

There can be no doubt but what there is such an inconsistency and irreconcilable conflict between the statute and the ordinance that both cannot stand together. The ordinance provides that no foreign substance or preservative of any kind shall be placed in milk or cream *for any purpose whatsoever,* while the statute provides that no foreign substance or preservative of any kind whatsoever shall be placed in milk or cream which *is injurious to health.* The italicized words differentiate the meaning of the two sections.

The ordinance absolutely prohibits the placing of all foreign substances and preservatives in milk or cream for any purpose, while the statute only prohibits the placing in milk and cream foreign substances and preservatives which are injurious to health. The former is an absolute prohibition, while the latter is conditional, or permissible if the preservatives are not injurious to health. We are, therefore, clearly of the opinion that there is an irreconcilable conflict between the two; and there would be no doubt but what the statute would repeal the ordinance by necessary implication if the statute was constitutional, but it is not, for the reasons stated in the first paragraph of this opinion.

We must, therefore, hold that said section of the ordinance is not repealed by that section.

III. This brings us to the consideration of the third or last proposition presented by this record, namely: Has a person in the city of St. Louis the legal right, under ordinance No. 20808, to sell or offer for sale dairy products which contain formaldehyde or other foreign substances?

That question involves two legal propositions, viz:

First. If the sales consist of interstate shipments and the products are sold in the original unbroken packages, then the answer would be in the affirmative; for the reason that all such sales are governed by the acts of Congress and not by the State laws. But if the original packages are broken and the milk, cream or butter is sold in different packages from those in which they were shipped into the State, then the answer would be the same as that stated in the next succeeding clause of this opinion, for the reason that such transactions would then be changed from interstate to intrastate commerce.

Second. Clause five of section four of an Act of 1907, entitled, "An Act to prohibit the manufacture

and sale of foods . . . ; and prescribing penalties for violations thereof," Laws 1907, p. 239, provides that "food shall be deemed to be adulterated: . . . . 5. If it contain any added substance which is poisonous or injurious to health." And section 14 of the same act prescribes a penalty of not less than ten nor more than five hundred dollars for the violation of any of the provisions of the act.

Said clause five of said section does not prohibit the adding of any substance to food (which, of course, includes dairy products) which *is not poisonous or injurious to health,* but it does expressly prohibit the adding thereto of any substance which is *poisonous or injurious to health.*

As shown by paragraph II of this opinion, the section 17 of the ordinance absolutely prohibits the adding to milk and cream any foreign substance of whatsoever kind for any purpose. The ordinance is much broader than is the statute. It covers all that the statute covers and more too. The statute only covers matters which are *poisonous or injurious to health,* while the ordinance covers those matters and all others, whether poisonous or injurious to health or not. There is clearly an inconsistency and repugnancy between the two, and so much so that both cannot stand; and we must, therefore, hold that the statute by necessary implication repeals said section 17 of the ordinance.

We must, therefore, hold that defendant cannot be punished for selling milk in the city of St. Louis, adulterated with formaldehyde, or other foreign substance, in violation of said section of the ordinance.

But since formaldehyde is a well-known poison, it cannot be placed in food of any kind, *in any quantity,* and be sold or offered for sale anywhere in the State without violating the express terms of clause 5 of said section 4 of the Act of 1907. And if such is being done, then the guilty parties may be prosecuted under the

State laws and punished for such violation. Learned
counsel for defendant misapprehend the meaning of the
statute in that regard. They contend that, under the
statute, poison or other substances which are injurious
to health may be lawfully placed in food and dairy pro-
ducts, provided the quantity used was not sufficient
to cause death or injury to health. That is neither
the letter nor spirit of the act. The statute makes it
a misdemeanor to place any substance in food of any
kind, *in any* quantity, for any purpose, which is poi-
sonous or injurious to health. If this is not the mean-
ing of the statute, then who would determine what
quantity is or is not injurious to health? Which one
of the thousands of dairymen and farmers who sell
milk throughout the State would determine that most
important question? If one may determine that ques-
tion, then each and all of them may do the same; and in
that case the quantity of poison contained in milk and
cream sold on the market would depend solely upon
the individual judgment of each and every producer
and vendor of dairy products. Of course where the
law absolutely prohibits the use of all poisonous mat-
ters and other substances which are injurious to health,
there could be no legal standard by which any one
could determine what quantity is or is not dangerous
to health. And under that condition of the law one per-
son might conclude that a certain quantity was not in-
jurious, another might think twice that quantity was
not, while a third might believe both were too large and
injurious, and so on to the end of the long list. If
counsel for defendant are correct in their contention,
then the foregoing would be the practical manner in
which the dairy business of the State would be con-
ducted; and the citizens of the State would thereby be
subjected to the extremely dangerous judgment or
caprice of each and every dairymen doing business in

the State. Such a result shows the unsoundness of their contention.

Nor is there anything in section 12 of said Act of 1907 which militates in the least against the conclusions above reached. That section reads as follows:

"Sec. 12. No dealer shall be prosecuted under the provisions of this act when he can establish a guaranty, as provided for in the National Food and Drug Act, approved June 30, 1906, or a guaranty, signed by the wholesaler, jobber, manufacturer or other party, residing in the State of Missouri, or who shall have filed in the office of the dairy and food commissioner a designation of the name and residence of some competent person being and continuing a resident of this State, process served on whom shall be valid and acceptable as personally served upon such party in any suit or proceeding under this act, from whom he purchased such articles, to the effect that the same are not adulterated or misbranded in the original unbroken packages, within the meaning of this act. Said guaranty, to afford protection, shall contain the name and address of the party or parties making the sale of such articles to such dealer, and in such case said party or parties shall be amenable to the prosecutions, fines and other penalties which would attach, in due course, to the dealer under the provisions of this act."

The clear and manifest meaning of that section is to relieve the dealer of the necessity of analyzing each and every *original and unbroken* package of milk and cream sold or consigned to him by the wholesaler, jobber or manufacturer, and to authorize him to sell from said packages under the guaranty mentioned therein, provided the wholesaler, jobber or manufacturer from whom he purchases has complied with the provisions of said section. In such case, if the wholesaler, jobber or manufacturer places any substance in such packages which is poisonous or injurious to

health, then he, and not the retail dealer, is liable to prosecution and fine for violating the statute. In other words, the clear meaning of the statute is that neither the wholesaler, jobber, manufacturer nor retail dealer of food or dairy products can lawfully place any substance in any food or dairy products which is *poisonous or injurious to health, in any quantity, for any purpose whatsoever.*

The argument of the learned City Counselor, that, to place the above construction upon the Acts of 1905 and 1907, and ordinance No. 20,808, would virtually destroy the city's system of inspection, is, it seems to us, without much real merit, for the reason that the city is protected by the State law, and whoever sells or offers to sell dairy products in the city of St. Louis in violation thereof is guilty of a misdemeanor and is liable to a fine of not less than ten nor more than five hundred dollars. With that law in force no very great injury could be inflicted upon the citizens of St. Louis before the city could pass an ordinance in harmony with the views herein expressed; and by so doing the entire laws of Congress, the State of Missouri, and the ordinances of the city would be brought into one general harmony, and thereby furnish to the citizens of that great city perfect protection against adulterated milk and cream, and at the same time relieve the city and milk dealers of the disorder and confusion that now prevail there.

We are, therefore, of the opinion that section 17 of Ordinance No. 20,808, of the city of St. Louis was repealed by clause five of section 4 of the Act of 1907, and, consequently, the action of the Court of Criminal Correction in quashing the information was correct, notwithstanding the fact that the Act of 1907 was not enacted until subsequent to the commission of the offense charged in the information, for the reason that the law is well settled in this State that the repeal of

an ordinance pending a prosecution under its provisions operates to relieve the defendant unless it is otherwise provided in the act repealing the ordinance. [City of Kansas v. Clark, 68 Mo. 588.] There is no such saving clause in the Act of 1907, and that omission cannot be supplied by an ordinance of the city containing such a clause.

The city council have no authority to act for the Legislature of the State, nor bind the Legislature by the passage of such an ordinance.

The judgment should be affirmed, and it is so ordered.

All concur, except *Valliant, J.,* absent, and *Lamm, J., dubitante.*