# CITY OF ST. LOUIS v. GEORGE AMELN, Appellant.

## In Banc, July 1, 1911.

1. **ACTION: Quasi-Criminal: Proceeding by City to Recover Penalty.** A proceeding in the name of a city to recover a penalty for the violation of an ordinance, such as an ordinance forbidding the adulteration of milk, is a criminal one from some points of view, but it is also a civil proceeding from other view points. The best the law has been able to do is to call it civil or *quasi*-criminal in character.

2. ————: ————: ————: **Sufficient Complaint.** Strict rules applicable to criminal informations are not applied to the complaint filed by a city to recover the penalty for the breach of an ordinance. Generally it is sufficient to charge the offense in the language of a clearly-expressed ordinance and with such certainty of time, place and manner as to reasonably notify defendant of the charge preferred.

3. ————: ————: ————: ————: **Omitting Section Number.** Usually the complaint, in a proceeding to recover the penalty for the breach of an ordinance, alleges the section of the ordinance violated as one earmark of identification. But where the ordinance is short and where the offense is plainly differentiated, a reference to the section fills no appreciable office, and an omission of the section number does not render the complaint bad.

4. ————: ————: ————: ————: **Adulteration of Milk by Adding Water: No Allegation of Standard.** Where the ordinance declares that milk shall be deemed to be adulterated if any substance have been mixed with it "so as to lower or depreciate or injuriously affect the strength, quality or purity" or "if any substance have been substituted wholly or in part," it is not necessary that a complaint charging the adulteration of milk by adding water allege a fixed standard by which to judge strength and quality. Courts take judicial notice of the laws of nature, and one of them is, as all men know, that water is bound to lower and depreciate the strength and quality of milk of any standard.

5. **ORDINANCES: Must be Proved.** Courts do not take judicial notice of the existence of ordinances and by-laws of cities, towns and villages. To be considered they must be offered in evidence as other evidential matters. A defendant on appeal cannot be heard to contend that, if prosecuted at all, he should have been pursued under an ordinance which was not offered in evidence.

6. **MILK ADULTERATION: Possession: Selling: Conflicting Ordinances: Prosecution Under Wrong One.** Ordinance 24297 of the city of St. Louis and section 499 of the Municipal Code of 1907 are not in conflict. Ordinance 24297 says that "no person shall have in his possession, with intent to sell, any milk which is adulterated," and section 499 says that "any person who shall adulterate milk with a view of selling or offering the same for sale or shall deliver the same to a purchaser, shall be deemed guilty," etc. The last section is leveled against the act of adulteration; the other, against the act of having the adulterated article in possession with intent to sell. So that a defendant charged with having "in his possession, with the intent to sell and offer and expose to sale," skim milk adulterated with water, cannot successfully contend that he should have been prosecuted under section 499, instead of Ordinance 24297, as he was; nor does he establish his defense by showing he did not put water in the milk found in his possession and being offered for sale by him.

7. **ORDINANCES: Conflicting with Statute on Same Subject.** In the case of conflict between a statute enacted by the General Assembly and an ordinance enacted by a municipal assembly, in a field where the right to legislate is concurrent, the ordinance must give way. But where the statute is silent the ordinance may speak.

8. **————: ————: Milk Adulteration: Pure Food Law.** Section 640, R. S. 1909 (being Sec. 10, Laws 1909, p. 113), denounces the selling or offering for sale or delivery to another adulterated milk. It is silent on the subject of having adulterated milk in possession with intent to sell. A city ordinance, therefore, that makes it an offense to have in possession milk adulterated with water, with intent to sell, etc., is not in conflict with that statute; and a prosecution under the ordinance may be sustained.

9. **————: ————: ————: ————: Secs. 640 and 6595 in Pari Materia.** Since the phrase "injurious to health" is used in Sec. 640, R. S. 1909, only in connection with milk "sold, offered or exposed for sale containing foreign substances or preservatives of any kind," the substance or preservative must be injurious to health in order to constitute the particular misdemeanor dealt with in that part of the statute, and, if that were all of the statute, and as water is not injurious to health, the ordinance, prohibiting one to have in his possession, with intent to sell milk adulterated with water, would be broader than the statute. But that statute also makes it a misdemeanor to sell "adulterated" milk for domestic use; and besides, that section must be read in connection with section 6595, with which it is *in pari materia,* and which declares that any food shall be deemed

St. Louis v. Ameln.

to be "adulterated" if any substance have been mixed with it "so as to lower or depreciate or injuriously affect its strength, quality or purity," and therefore it cannot be held that the public policy of this State is to permit the sale of watered milk so long as a scientific standard is observed. There is no conflict between these statutes and an ordinance forbidding, under penalty, any one from having in his possession, with intent to sell, skim milk adulterated with water.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*Wm. L. Bohnenkamp* and *E. F. Stone* for appellant.

(1) The ordinance expressly provides that it shall apply only to cases of "adulteration" not included within the "methods of adulteration prohibited by the Revised Code of St. Louis." Defendant is charged with mixing with or adding "water" to skimmed milk. Therefore, if there was at the beginning of this prosecution, in May, 1909, any provision of the Revised Code of St. Louis which expressly prohibited the adulteration of milk by mixing or adding "water" by name and providing a punishment therefor, then this prosecution must fall, as having been instituted and proceeded with under the wrong ordinance. The allegations of the complaint, and provisions of ordinance 24,297, and section 499 of the said Revised Code, both in evidence, show beyond doubt that the city has proceeded under the wrong ordinance; and this position is conclusive when all the evidence is taken into consideration. The particular mention of certain things in one statute will withdraw such things from the application of the general words of another statute which would otherwise embrace them. Gilkeson v. Railroad, 222 Mo. 204; State ex rel. v. Slover, 134 Mo. 19; St. Louis v. Kaime, 180 Mo. 319; Poon v. Watson, 92 Mo. App. 96; Sutherland on Stat. Const., sec. 217; Ruschenberg v. Railroad,

161 Mo. 70. (2)   Ordinance 24297 is also invalid and
ineffectual in its application to the adulteration of milk
by the use of "water" for the reason that it is a general
ordinance that by itself would include adulteration of
milk with water, but there is another ordinance pro-
vision, section 555, Rev. Code 1907, which applies
specially and particularly to adulteration of milk with
"water," and, therefore, withholds such adulteration
from the application of said general ordinance 24297,
and said prosecution should have been under said
section 555.   (3)   Ordinance 24297 being general,
and including the adulteration of milk with "any sub-
stance or substances," and said sections 499 and 555
applying particularly to adulteration of milk with a
specially named substance, "water," they are, neces-
sarily, in conflict.   Gilkeson v. Railroad, 222 Mo. 205;
Ruschenberg v. Railroad, 161 Mo. 70.   If so, then
ordinance 24297 is invalid and ineffectual, for it does
not repeal said prior sections, 499 and 555 in "express
terms," as required by the Charter of St. Louis, article
3, sec. 28.   (4)   The complaint fails to set forth facts
sufficient to constitute any cause of action against
defendant, or a violation of any ordinance of the city of
St. Louis, and especially ordinance 24297.   In an action
to recover a penalty for the violation of a by-law or
ordinance, the complaint should state facts which make
liability of the defendant distinctly to appear.   Dillon,
Mun. Corp. (4 Ed.), sec. 415 A; Beach on Pub. Corp.,
sec. 532.   There are many cases where it is only neces-
sary to charge the offense in the language of the ordi-
nance or statute.   But this rule only applies where the
ordinance so clearly individuates and describes the
offense in its very language, that defendant and the
court can tell what the offense that he is to be tried for
really is.   Where the language of the ordinance does not
do this, there must be further statements descriptive
of the offense and alleging the illegal act committed.
The offense described in the ordinance does not consist

only of "water" being mixed with skimmed milk, but it must be mixed with it "so as to lower and depreciate its strength and quality." What "strength and quality"? Does it mean that which the milk had prior to the adding of the water? Or does it mean "strength and quality" as fixed by a standard provided by law or ordinance? Or does it mean "strength and quality" which it should have in the judgment of the chemist making the analysis? Whichever it may be, the allegations should be sufficient to inform the defendant and not leave it to be guessed at by him, the court or the lawyers. Said complaint is vague, uncertain and indefinite, and leaves defendant without any show of defending himself, except to swear that he added or mixed no "water." The allegation, "so as to lower and depreciate its strength and quality," is a mere conclusion and no statement of fact or information. Lippman v. City, 84 Ind. 276; Johnson v. City, 48 Kan. 129; Fink v. City, 17 Wis. 27; State v. Smith, 66 Mo. App. 405; State v. Wilkson, 36 Mo. App. 380; State v. Goulding, 44 N. H. 284; Shivers v. Newton, 45 N. J. L. 477. (5) Said ordinance is null and void, as having been repealed by the Legislature, Laws 1909, pp. 118-119. Said ordinance is in conflict and inconsistent with Sec. 10 of said act. Said ordinance makes the mixing of "any substance or substances" with milk an adulteration. Whilst said section 10 of the statute makes the adding of any foreign substance "injurious to health" an adulteration. These provisions are in conflict. St. Louis v. Wortman, 213 Mo. 131.

*Lambert E. Walther* and *A. H. Roudebush* for respondent.

(1) Section 499, Revised Code of St. Louis, does not prohibit the offense here charged, and the complaint was properly based on ordinance 24297, which does. (2) Section 555 was not offered in evidence and will

not be judicially noticed. St. Louis v. Liessing, 190 Mo. 49. The complaint could not have been based on Sec. 555 because it does not prohibit the offense in question. (3) Neither Sec. 499 nor Sec. 555 is in conflict with ordinance 24297. St. Louis v. Klausmeier, 213 Mo. 131. (4) The complaint is sufficient because it describes the offense in the language of the ordinance. St. Louis v. Weitzel, 130 Mo. 600; St. Louis v. Knox, 74 Mo. 80; Louisiana v. Anderson, 100 Mo. App. 341; Springfield v. Ford, 40 Mo. App. 586; St. Louis v. Liessing, 190 Mo. 464; St. Louis v. Bippen, 201 Mo. 528. (5) The act of 1909 prohibits adulteration of milk, and the ordinance properly defines it. Hence there is no conflict. Webster's Int. Dict., "Adulterate; debase"; 1 Am. and Eng. Ency. Law, 738; 1 Bouvier's Law Dict., "Adulterate;" St. Louis v. Klausmeier, 213 Mo. 127. Another statute defines adulteration and defines it in the language of the ordinance. Laws 1907, p. 239, sec. 4, cl. 1. There is no conflict between the statute and the ordinance in question, and the case of St. Louis v. Wortman is not applicable. Laws 1905, p. 133, sec. 5; Laws 1907, p. 239, sec. 4, cl. 1; Laws 1909, p. 118, sec. 10; St. Louis v. Wortman, 213 Mo. 148.

LAMM, J.—Summoned and found guilty in the first district police court of St. Louis on the complaint of the city for violating a milk ordinance, defendant took an intermediate appeal to the court of criminal correction. Found guilty there and fined $25, he, in apt time and on due steps, appeals here.

The material record follows:

The complaint reads:

"George Ameln, to the City of St. Louis, Dr.

"To One Hundred Dollars for violation of an ordinance of said city,

"Entitled: An ordinance to prohibit the sale of milk and cream which are adulterated or misbranded within the meaning of this ordinance and prescribing

penalties for violation thereof.  Being ordinance No. 24297, approved March 26, 1909.  In this, to-wit:  In the city of St. Louis and State of Missouri, on the 22nd day of April, 1909, and on divers other days and times prior thereto, the said George Ameln did then and there have in his possession with intent to sell and offer and expose for sale at alley near Texas and Shenandoah avenue in said city of St. Louis, skimmed milk, which said skimmed milk was adulterated in that a substance to-wit, water, had been mixed with it so as to lower and depreciate its strength and quality, contrary to the ordinance in such case made and provided, on information of Thomas A. Buckland, city chemist."

Omitting (as immaterial)  title, ordaining clause and sections 3, 4 and 5, ordinance 24297 reads:

"Section One.  No person or persons, firm or association of persons, company or corporation shall, within the city of St. Louis, sell, offer or expose for sale, or have in his or its possession, with intent to sell, any milk or cream which is adulterated or misbranded within the meaning of this ordinance, or cause or procure the same to be done by others.

"Section Two.  In addition to other methods of adulteration prohibited by the Revised Code of St. Louis, milk or cream shall be deemed to be adulterated, First, If any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect the strength, quality or purity.  Second.  If any substance or substances have been substituted wholly or in part for the same.  Third.  If it is mixed or colored in a manner whereby damage or inferiority is concealed, or if by any means it is made to appear to be better or of greater value than it really is."

As pertinent to certain of his propositions, defendant read into the record sections 499 and 505 of the Revised Code of St. Louis, annotated by Woerner, 1907, viz.:

"Sec. 499. *Adulteration, Etc. Misdemeanor—Penalty—Exceptions.* Any person who shall, by himself, or by his servant, agent or employee, adulterate milk or cream, or change it in any respect by the addition of water, skimmed milk, or of any foreign substance, or by the removal of any constituent, with a view of selling or offering the same for sale or exchange, or shall deliver same to a purchaser, otherwise than with its due proportion of each of its natural components, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars for each and every offense.

"Sec. 505. The following regulations shall govern the sale of milk known as skimmed milk.

"First. All milk which contains not less than ten and five-tenths per cent of total solids and one and five-tenths per cent butter fat, which is of a specific gravity between one thousand and thirty-two and one thousand and thirty-eight, which is free from foreign additions of any kind, and any evidence of decomposition, which is stored, transported and delivered to purchasers at the temperature provided in this article for sweet milk shall be known as skimmed milk, and may be lawfully sold as such under the following regulations:"

An inspector of the city chemist's office, at the time and place mentioned in the complaint, took a sample bottle of milk from defendant's milk wagon while the driver was on his route, and delivered it, sealed, to the assistant city chemist. Said assistant, Moody, qualified as an expert by showing he earned the degrees of B. S. from Dartmouth, and M. S. and Ph. D. from Yale, taught mathematics for three years at McKenzie College, Sao Paulo in Brazil, chemistry a year in Yale, analytical chemistry the rise of a year in the University of Wisconsin and had been assistant city chemist in St. Louis since December, 1907. At Yale he took a course on food analysis, had been employed in

the agricultural experiment station of Connecticut and was versed in the chemical analysis of milk. He analyzed the milk in the sample bottle and said it contained "added water," and that water, added to milk, lowered and depreciated its strength and quality and made it less valuable than it should be. The sample fell short of ordinance requirements in specific gravity, butter fat, non-fatty solids, and ash, was below extremely poor samples of milk. In fine, the analysis showed, if Moody is to be credited, that the milk had been "treated with water."

Defendant having taken the stand in his own behalf, the bill of exceptions shows this followed:

"Q. Do you prepare your milk for your routes? A. Yes, sir.

"Q. I will ask you, Mr. Ameln, if you, on the 22d of April—it is charged that you, on the 22d of April, 1909, had water in your milk— A. I didn't put no water in there.

"The Court: Wait until he finishes the question and see what he asked you.

"Mr. Bohnenkamp (To stenographer): Read the question. Question read.

"Mr. Bohnenkamp: That is all."

The case was tried without a jury. Instructions were asked by defendant and refused. Motions to quash, for a new trial and in arrest were filed and overruled. There is no call to reproduce any of them. It is sufficient to say of them that defendant's grievances were made and decided below—i. e., the angles or points from or on which his brief attacks the validity of ordinance 24297 and the complaint appeared below, and are rightly here for review on exceptions saved.

Epitomized, they may be said to be:

(1)  The complaint is bad.

(2)  The gravamen thereof being the adulteration of skim milk by water, the prosecution is under the wrong ordinance. Ameln should have been charged

with violating section 499, Revised Code of St. Louis, 1907, supra, and not ordinance 24297, supra, which latter became a law in March, 1909. Or if not prosecuted under section 499, he should have been prosecuted under section 555 of said Revised Code, which provided that the selling or offering for sale of any milk adulterated with water, etc., is a misdemeanor— neither being repealed in "express terms," as the charter requires, and both being in conflict with ordinance 24297.

(3). Ordinance 24297 is in conflict with section 10 of an Act of the General Assembly concerning Agriculture, etc., and creating a Bureau of Dairying (Laws 1909, p. 113, now R. S. 1909, sec. 640); hence is null and void.

All we shall say can be appropriately said under those heads.

I. *Of the complaint.*

A proceeding in the name of a city to recover a penalty for the breach of an ordinance is a criminal one from some points of view. It invokes some of the ideas, terminology and machinery of the criminal law, but it is also a civil proceeding from other view-points. The best the law has been able to do is to call it civil or *quasi*-criminal in character. [Ex parte Hollwedell, 74 Mo. 395; St. Louis v. Weitzel, 130 Mo. l. c. 612.] The rule is to not apply to pleadings in such proceedings the strict rules applicable to criminal informations. They are accorded a sensible treatment more akin to that given pleadings in magistrate courts. Generally, it is sufficient to charge the offense in the language of the ordinance and with such certainty of time, place and manner as to reasonably notify defendant of the charge preferred, thereby enabling him to prepare his defense and subsequently to plead *res judicata* or (if criminal terminology is to be used)

*autrefois convict* or *autrefois acquit.*   [St. Louis v. Weitzei, supra; St. Louis v. Bippen, 201 Mo. l. c. 531-2.]

There might be a case where the ordinance is so "darkly penned" that additional descriptive words are necessary to set forth the offense so that liability would clearly appear.  But we see nothing in this case bespeaking such exception.

Usually the complaint alleges the section of the ordinance violated as one earmark of identification. But where the ordinance is short, as here, and where the offense is plainly differentiated, as here, a reference to the section fills no appreciable office.  Defendant does not criticise the complaint because the section number is omitted.

The criticism is that the mixture of water with skim milk must be "so as to lower and depreciate its strength and quality."  The idea advanced seems to be that the complaint is deficient in not setting forth some fixed standard by which to judge "strength and quality."  Otherwise (so the argument runs) the standard might be an *ideal* one in the chemist's mind, or one prescribed by ordinance, or the condition of the milk prior to the addition of the water might be the standard; hence the complaint should throw light thereon, so defendant might know by which measuring rod or standard his act is to be measured or judged— that course would provide a check to the testimony of the chemist.  But we shall assume that science can detect the addition of water to milk, whether the dairyman's cows gave poor milk or rich milk, regardless too of any mere ideal standard in the chemist's mind or of any ordinance standard.  It is nothing to the point to say there is a large percentage of water in milk as it comes from the cow.  That particular water has been so treated by the subtle and mysterious alchemy of nature that presumably it holds in solution such delicately adjusted and blended proportions of fatty and non-fatty solids as make normal cow's milk (wholesome

to all) a necessity to the young. Milk, an object of profound and vigilant concern to the modern law-maker, has been always part and parcel of the daily life, the adages and folklore of mankind. For example: We are told not to cry over spilt milk—that is, not to fret over real loss that can't be helped. The Russian has an adage, That which is taken in with the milk only goes out with the soul—that is, early impressions last till death. The Swede has one denoting hospitality, viz.: When there is milk in the can for one, there is milk in the can for two. In the phrase, "The milk of human kindness," is expressed the very heart and office of that gentle but noble virtue. The bard of bards does not hesitate to connect milk and philosophy, deeming that neither loses dignity by the juxtaposition, he speaks of "Adversity's sweet milk, philosophy." All such amiable metaphors, saws, similes, associated ideas and folklore eschew the belittling idea of water in milk, *contra*, the milk held in mind is good milk. I recall but one instance to the contrary (seemingly the inad-vertence of a daring and erratic genius) viz.:

"Oh, Mirth and Innocence! Oh, milk and water!
Ye happy *mixtures* of more happy days."

Indeed, the universal, primal and spontaneous mental conception we have of milk, in the first instance, is that it is unwatered. Take one case for an example: Milk and honey are emblems of pastoral good luck, peace and plenty—a large and a goodly land. Witness the phrase, A land flowing with milk and honey. [Ex. III, 8; Jer. XXXII, 22.] But what a derisive picture would rise to harass the imagination by use of the phrase, A land flowing with *watered* milk and honey?

We think the ordinance proceeds on the notion that however much the cow waters her own milk in her humble and honest way (letting nature take her course), the milkman has no right to designedly dupli-cate nature's gift of water by a furtive gift of his own from the barnyard pump. It proceeds on the under-

lying theory that it is a fraud, a trick and a veritable cheat—contrary to the common law and hence of that phase of it known colloquially as the "square deal"— to sell water, when milk, not water, is the commodity dealt in.  If one is not to get a stone who asks for bread, no more (under the spirit of the ordinance) is he to get water who asks for milk.

But, coming closer to the point, if the mechanical addition of water did not in the very nature of things lower and depreciate the strength and quality of milk of a named standard, then, by that token, a "standard" would be of substance and fill an office in defining the offense.  But the fact is not so.  *Per contra*, we will take judicial notice of the laws of nature, and one of them is:  Water is bound to lower and depreciate the strength and quality of milk of *any* standard.  "As weak as water" is a comparison summing up the whole brood of weaknesses; *ergo*, a standard is not an essential element in a charge of adulterating milk by adding water.  In this view of it, is not the ingenious argument of learned counsel unsound?  We think so.  Accordingly we hold the complaint well enough and rule the point against defendant.

II.  *Is the prosecution under the wrong ordinance?*

Under this head the contention splits in twain. The first branch runs on the theory that if Ameln be guilty, his guilt springs from a breach of section 499, Revised Code of St. Louis. The second runs on the theory that if he be not guilty under that section, he still should not have been pursued under ordinance 24297, but under another section of the municipal code, viz., 555.

Of these contentions in reverse order.

(a).  There is no substance in the last proposition.  To consider it would be but to amuse ourselves by sitting down to a Barmecide feast.  Witness: Said Sec. 5 was not offered in evidence.  True, it is

quoted in counsel's brief and we are invited to consider
it. That we may not do; for it is a very stiff and wise
rule that courts will not take judicial cognizance of
the mere ordinances and by-laws of villages, towns and
cities. They are evidential facts to only cross the line
of judicial vision, if at all, by being first made part of
the record. To go outside the case to decide the case is,
as has been said of old, to embark on a shoreless sea
without chart, rudder or compass. "Keep within the
record" is a stern and cardinal precept of the law.
[St. Louis v. Roche, 128 Mo. l. c. 544 *et seq.*; Bailey v.
Kansas City, 189 Mo. l. c. 514; St. Louis v. Liessing,
190 Mo. l. c. 490.]

By force of that rule we put section 555 away from
us, "*sub silentio* and with averted eye."

(b). The last proposition is delicate and nice.
It is better elucidated by outlining the argument
advanced in its support, viz.:

Counsel say in effect, *ex vi termini*, ordinance
24297 (*quod vide*) is limited and confined in its applica-
tion to narrow and inflexible bounds, viz., to those
cases only where the adulterations charged differ in
kind from those struck at by the municipal code of
1907. Now, the municipal code (Sec. 499, supra, *quod
vide*) counsel say denounces the adulteration of milk
by adding "water;" therefore the offense of watering
milk was already provided for before the passage, on
March 26, 1909, of ordinance 24297. In this view of it
the prosecution should have been under section 499.

Moreover, in the evolution of their argument, they
say section 499 is special, while ordinance 24297 is
general. Having reached that conclusion they invoke
the doctrine that where there are two statutes and the
provisions of one apply specially to a particular sub-
ject clearly including the matter in question, and the
other is general in terms and such that if standing alone
it would include the same matter, and thus conflict with
each other, then the special act must be taken as con-

stituting an exception to the general act. Applying that doctrine, they say the prosecution should have been based on section 499, not on 24297, as it was.

The instant case is one of an aggregation of cases submitted together to test the legality of certain milk ordinances of St. Louis. In some of them ordinance 24297 is criticised from another side, but the foregoing sufficiently indicates the scope and character of the criticism in hand.

An analysis and comparison of the terms of ordinance 24297 and of section 499 of the municipal code show the one covers a different field from the other. They are leveled at different phases of the subject. The complaint in this case counts on Ameln's having "in his possession with the intent to sell and offer and expose for sale,"etc., skim milk adulterated with water, etc. That allegation connects itself with the language of ordinance 24297, viz.: "No person . . . shall . . . have in his . . . possession with intent to sell, any milk . . . which is adulterated," etc. Turning to section 499 of the municipal code, so far as pertinent it reads: "Any person who shall . . . adulterate milk . . ." (in enumerated ways) "with a view of selling or offering the same for sale . . . or shall deliver the same to a purchaser . . . shall be deemed guilty of a misdemeanor," etc. It will thus be seen that section 499 is leveled against the act of *adulteration* with the intent pointed out—to be guilty under that section one must create the contraband milk; while ordinance 24297 is leveled against the act of having in *possession* the contraband milk with the intent, etc.—to be guilty under that ordinance one need not create the contraband mixture, he need only have it in possession with the interdicted intent. Ameln was charged and convicted of the latter offense, viz., of having the forbidden milk in possession with the intent denounced. He testified he did not create the forbidden thing himself; that is, water his milk. But he

said nothing about having it in his possession. His predicament is that of a man who, charged with a certain offense, undertakes to acquit himself by testifying he was not guilty of another and separate offense— palpably a shot at the wrong mark; therefore a' *miss*, not a *hit*.

Something was made, *ore tenus*, of a supposed or possible case— put thus:   A milk peddler buys watered milk in bulk for his trade in good faith, i. e., in ignorance of the water and honestly believing it unwatered.   He has the mixture in possession with intent to sell. *Query*:   Can he be convicted under the terms of the ordinance?   That raises the question of guilty knowledge, the *scienter*, in prosecutions under pure food laws. Must a dealer know, must he have a criminal intent, before he can be adjudged guilty?   Or is the burden and duty on the dealer to inform himself in the premises before handling contraband goods?   Which of the two (the innocent and deceived public or the innocent and deceived dealer) must suffer?   Something of substance might be said on both sides of that proposition—one not unknown to the enforcement of laws relating to pure foods.   But the question does not arise on the record in this case and, therefore, is in the air.   When, if ever, a case is here involving and turning on that question, then will be the fit time and season to decide it.

There is no conflict in the particulars discussed between ordinance 24297 and section 499 of the municipal code.   They do not relate to the same offenses. Accordingly, the proposition up is ruled against defendant.

III.   Does the ordinance conflict with Revised Statutes 1909, section 640—the latter being section 10 of the Act of 1909 (Laws 1909, p. 113).

Section 640, Revised Statutes 1909, is an elaborate attempt at State regulation of the sale of milk under the police power.   As the voice of the State lawmaker

is paramount to that of the municipal lawmaker, and as the duty of the latter is to conform to the former, in a field where the right to legislate is concurrent, in case of conflict between a State law and a municipal ordinance, the latter must give way. [St. Louis v. Wortman, 213 Mo. 131; St. Louis v. Klausmeier, 213 Mo. 119.]

Attending to that section, it contains a series of enumerated and interdicted kinds of milk, each connected with the other by the disjunctive conjunction "or," and all relating to the selling, offering or exposing for sale anywhere in this State any milk or cream of the several kinds described. The law is so framed that a swarm of separate offenses might arise. One of them strikes at milk mixed with foreign substances or preservatives "injurious to health." Another, at the sale for domestic or potable use of "any unclean, impure, *adulterated* or unwholesome milk." The section describes and forbids the sale of other milk not material here. It is long and will not be reproduced.

The ruling heretofore made in the analysis and comparison of ordinance 24297 with section 499 of the municipal code in clause *b* of paragraph II of this opinion, to the effect that they were in part leveled at different phases of the same subject (viz., the ordinance struck at the possession of adulterated milk with the intent to sell, offer to sell or exposure to sale, while section 499 of the municipal code struck at the act of adulterating itself with a view of selling), bears upon the proposition now under consideration. The pertinent language of the State statute (Sec. 640, supra) is: "Whoever shall sell or offer or expose for sale anywhere in this State any milk . . . *or* shall sell or offer for sale or deliver to another . . . adulterated *or* unwholesome milk . . . shall be guilty of a misdemeanor." Observe, the statute denounces the selling or offering for sale or delivering to another milk under the ban. It is silent on a phase of the matter covered by the ordinance, to-wit, *possession with the*

*intent to sell.* Hence, under the ruling in clause *b* of paragraph II there is no conflict between the ordinance and the statute in that particular. The doctrine of this court is that where the statute is silent the ordinance may speak. [St. Louis v. Klausmeier, 213 Mo. 1. c. 127.] Furthermore, the statutory phrase, "injurious to the health," is used only in connection with milk "sold, offered or exposed for sale containing foreign substance or preservatives of any kind." In such case the substance or preservative must be injurious to health in order to constitute the particular misdemeanor dealt with in that part of the statute. If that were all of the statute, it might well be argued that, as pure water is not injurious to health, the ordinance is broader than the statute and therefore in conflict. But, as said, it does not stop there. It goes on and makes it a misdemeanor to sell or offer, etc., "adulterated" milk for domestic or potable use. That statute must be read with another, a prior one, Revised Statutes 1909, section 6595 (Laws 1907, p. 239) defining the adulteration of food. They are *in pari materia.*

Section 6595, supra, provides, *inter alia,* as follows: "Food shall be deemed to be adulterated: 1. If any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect its strength, quality or purity." Keeping in mind the statutory definition of "adulterated," it may not be soundly argued (as it was in effect at this bar) that the public policy of this State is to permit the sale of watered milk, so long as a scientific standard is observed. The boasted mind of man that encompasses the great may be allowed to encompass the small, and it is but a small grain of sand on the shores of common knowledge, that water lowers, depreciates and injuriously affects the strength, quality or purity of cow's milk. Milk is the food of foods. The felicity of the table hinges on milk. Nay, considered by and large, bar milk, and how long would the race itself last? We know, too, that cow's

St. Louis v. Kellman.

m'lk is a respectable and common substitute for mother's milk. To injure the young is to grind the seed corn. It being essentially a food, when the Legislature two years later used the word "adulterated" in section 640, supra, in connection with food, it was presumably connected in the legislative mind with its prior legislative definition in section 6595—a definition on all-fours with that of standard lexicographers and with ordinance 24297.

On such premises, we hold there is no conflict between the ordinance and the statute, and that they are neither inconsistent nor irreconcilable with each other.

It follows that the conviction was right and the judgment should be affirmed. It is so ordered. All concur, except *Valliant, C. J.*, who dissents.